Booth, Chief Justice,
delivered the opinion of the court:
This case is now before the court unon defendant’s demurrer to plaintiffs’ petition. The petition alleges a cause of action predicated upon a breach of contract, of which the following is a copy:
This Agreement
Made this first day of November, 1922, between the United States of America, represented by Wilmer G. Platt, of Washington, District of Columbia, custodian of site, party *548 of the first part, and Plimpton B. Chase, of Sparta, party of the second part, whereby the party of the first part has let, and does hereby let, to the party of the second part the premises known as the Grand Opera House, Fifteenth and E Streets, northwest, and ground floor of 1424 Pennsylvania Avenue, northwest, being the Avenue entrance of the theatre property and private office connected with lobby, but not including the space in the basement of said property known as the “Armory,” the property rented being _ a theatre, and being located in the city of Washington, District of Columbia, by the month, commencing on the first day of November, A. D. 1922, at and for the monthly rental of four hundred and sixteen dollars and sixty-seven cents ($416.67) from November 1, 1922, to June 30, 1939, unless sooner terminated under the provisions hereinafter mentioned, and from and after July 1, 1939, at and for the monthly rental of sixteen hundred and sixty-six dollars and sixty-seven cents ($1666.67), said rent to be payable in advance, that is to say, on the first day of each month in advance for the ensuing month.
AND the said party of the second part has agreed that he will take, and does hereby take and hold, the said premises as tenant by the month at the said rent, payable as aforesaid; that he will pay the water rent, gas and electric bills as they become due; and that he will not sublet or assign the said premises, or any part thereof, or carry on any business therein except that of a theatre for reputable theatrical productions without the written consent of the said lessor, or use the same for any disorderly or unlawful purpose.
It is undeestood and agreed that the cost of certain work now in progress, contracted for by the party of the second part, and necessary to meet the requirements of the District Commissioners as a condition precedent to the reopening of said theatre, estimated by the contractor, the George A. Fuller Construction Company, and Thomas W. Lamb, the architect in charge, to be over $250,000, will be borne by the party of the second part, and upon completion of the work, he will furnish to the party of the first part properly receipted bills showing payment for the work performed, it being expressly understood and agreed that the party of the first part assumes no responsibility or liability on account of the moneys so expended.
Permission is granted to the said Plimpton B. Chase, party of the second part, to sublet the property herein referred to, under all the terms of this agreement, to S. Z. Poli, of New Haven, Connecticut, under the provisions of a letter from said party of the second part dated March 8,1912, copy attached, and which was previously approved by the *549 party of the first part. PROVIDED, That if the aforesaid lessee shall fail to pay the said rent in advance as aforesaid, although there should have been no legal or formal demand for the same, or shall neglect to pay the water rent, gas or electric bills at the time and on the day when the same shall fall due and be payable as hereinbefore mentioned, or shall sublet or assign the said premises, or any part thereof, or carry on any business therein except that of a theatre, or that of furnishing space for public meetings, conventions, and the like, without the written consent as aforesaid; or shall use the same for any disorderly or unlawful purpose, or break any of the covenants herein contained, then, and in any one of said events, this agreement and all things herein contained, shall cease and determine, and shall operate as a Notice to quit, the thirty days’ notice to quit hereinafter mentioned, being hereby expressly waived. And the said lessor, his successors in office, shall and may proceed to recover possession of said premises, under the provisions of the Code of Law for the District of Columbia to regulate proceedings in cases between landlords and tenants; but if no default occurs on the part of said lessee, then he shall be entitled to not less than thirty days’ notice to vacate the property hereby demised, which notice shall be given, in writing, at least thirty days before said tenancy is intended to be terminated.
And it is fuRther provided, That if, under the provisions of this agreement default be made and compromise or settlement shall be made thereupon, such compromise or settlement shall not constitute a waiver of any covenant herein contained. And the said lessee hereby agrees to deliver the property herein demised in the same order in which it was received, usual wear and tear, and fire and storm excepted; and it is further agreed that no waiver of one breach of any covenant herein contained shall be construed to waive or in any manner affect the covenants of this agreement.
It is further agreed-, That rent shall cease if the said premises be destroyed by fire or any unavoidable casualty, so as to make them uninhabitable; but in such event there shall be no refund of any portion of the rent that may have been paid by the party of the second part in advance.
It is further understood and agreed, That, provided rent is paid monthly in advance and all other provisions of this rent agreement are observed by the party of the second part, he shall be allowed to occupy the property, and the said party of the second part hereby agrees to continue as lessee of the said property under this agreement at the rental hereinbefore stated, until such time as the United States Government re *550 quires the same for its own use; notice of such requirement to be given as above provided.
It is FURTHER COVENANTED and agreed, That the party of the second part will do, at his own expense, all necessary interior repairs and refit the said theatre, including the Avenue entrance, and the party of the first part shall do, at its expense, all necessary exterior repairs.
The party of the first part further agrees, That the use of the premises in the basement of said theatre, now known as the-“ Armory ” shall not, at any time, be such as will interfere with the performance given in said theatre, nor annoy or disturb the audiences witnessing such performances, nor shall cmy material be stored therein which will form a fire menace to the property.
It is further provided, That, upon the termination of this agreement, any and all fixtures and scenery which heretofore have been or hereafter may be placed in the above-described property by the party of the second part shall become the property of the party of the first part, it being the intention hereof that the party of the first part herein shall have the benefit of and be entitled to all the rights of the lessor under the lease of the premises herein described, executed May TTth, 1906, by and between the Grand Opera House Company and Orrin G. Staples, parties of the first part, and Plimpton B. Chase, party of the second part, and the continuation of said lease executed by W. W. Ludlow, custodian of site, and said Plimpton B. Chase, executed June 1, 1910.
It is mutually understood and agreed, Between the parties of the first and second parts that this agreement shall be in substitution of one previously entered into by them under date of March 1, 1922, covering the rental of the above-described property.
In testimony whereof, We have hereunto set our hands and seals the day and year first hereinbefore written.
(Signed) Wilmer G. Platt. [seal.]
(Signed) Plimpton B. Chase, [seal.]
Witnesses:
(Signed) Samuel H. Marks.
(Signed) T. H. Callahan.
Plaintiffs went into possession of the described premises under the above lease, observed the obligations stipulated, and remained in possession until notified to quit and surrender the same to the defendant by July 1, 193.0.
The defendant’s demurrer is rested upon two propositions: First, it is asserted that the official of the Government executing the lease in behalf of the same is not shown to *551 have possessd authority so to do; second, that the lease created only a tenancy by the month and could be legally terminated by giving a -thirty-days’ notice to vacate.
The first contention of the defendant, we think, is without merit. The act of March 4, 1909 (35 Stat. 959), authorized the Secretary of the Treasury to rent buildings acquired by the Government “until their removal becomes necessary,” and the lease recites the fact that the official of the Government signing the same was- acting as the representative of the Government. In addition to this, however, the Government accepted the rentals paid under the lease by the plaintiffs without question and still retains the sums, permitting the plaintiffs to remain in peaceable possession of the premises under the lease until notified to -vacate under its terms.
The second contention is, we think, invulnerable. The lease, taking into consideration all its provisions, seems to clearly create a tenancy by the month, subject to termination upon thirty days’ notice to vacate. The first and second paragraphs expressly limit the term to “from month to month” and the express provision recites—
“ * * * and the said party of the second part hereby agrees to continue as lessee of the said property under this agreement at the rental hereinbefore stated, until such time as the United States Government requires the same for its own use; notice of such requirement to be given as above provided.”
The plaintiffs rely upon certain provisions of the lease as indicative of an intent to create a term from November 1, 1922, to June 30, 1939, and in this connection emphasis is laid upon the provision exacting of the plaintiffs the expenditure of $250,000 to place the building in a condition to be used as a theatre, as well as an additional stipulation requiring the plaintiffs to pay a monthly rental of $416.67 from November 1, 1922, to June 30, 1930, and thereafter an increased monthly rental of $1,666.67 until June 30, 1939.
The petition alleges that the Secretary of the Treasury notified the plaintiffs to vacate and “ that defendant would require it for official purposes.” The lease unquestionably *552 authorized this procedure, and from its terms an inference is allowable that, when entered into, the premises in question were not needed for governmental purposes and possibly would not be for some years to come. As a matter of fact, the plaintiffs remained in possession for about eight years at what is admitted to be a nominal rental and doubtless fixed in view of the expenditure to be made for improvements. Irrespective of this fact, however, the terms of the lease are determinative, and the Government having reserved the right to terminate and having acted within contractual rights, the cause of action alleged in the petition is not sustainable.
The demurrer will be sustained and the petition dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Green, Judge, concur.